## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DEBORAH R. MALLOY, | : | |
| | : | |
| **Debtor.** | : | |
| _____ | : | |
| | : | |
| J & V DEVELOPERS, INC., | : | |
| | : | **CIVIL ACTION NO. 15-5046** |
| **Appellee,** | : | |
| | : | **BANKRUPTCY NO. 14-17727** |
| v. | : | |
| | : | **ADVERSARY NO. 14-687** |
| DEBORAH R. MALLOY, | : | |
| | : | |
| **Appellant.** | : | |

## <u>MEMORANDUM</u>

**Tucker, C.J.**                                                              **May 11, 2016**

Presently before the Court are a Certificate of Appeal from an August 10, 2015 Order entered by the Honorable Eric L. Frank, United States Bankruptcy Judge for the Eastern District of Pennsylvania (Doc. 1), Appellant's Brief (Doc. 5), Appellee's Brief (Doc. 6), and Appellant's Reply Brief (Doc. 7). Upon consideration of the parties' submissions and exhibits, this Court AFFIRMS the decision of the Bankruptcy Court.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.   *Breach of Contract Action*

Appellee J & V Developers, Inc. ("J & V") is a developer of a planned community, the Spring Valley Estates in Aston Township, Pennsylvania. *J & V Developers, Inc. v. Hargy*, No. 08-51847, 2012 WL 11866877, at *2 (Pa. C.P. Ct. Aug. 13, 2012). On March 15, 2007, Appellant Deborah R. Malloy ("Debtor"), acting through a broker, Mr. Dominic Bucci, entered into a Non-Exclusive Buyer Listing Agreement with Century 21- Crest Real Estate in

1

anticipation of the purchase of a home in the Spring Valley Estates.  *Id.* at *3.  Mr. Bucci acted

on behalf of the buyer and the seller in this transaction.  *Id.* at *2.  On March 22, 2007, Debtor

entered into a formal Agreement of Sale (the "AOS") with J & V for the home and placed

$10,000.00 in escrow.  *Id*. at *3.  Settlement was scheduled to take place on or before June 30,

2007.  *Id.*

      The AOS provided that "Settlement would take place on ten days notice if the property

was not ready for occupancy at the end of June, 2007."  *Id.*  Section Four of the AOS

"specifically required [Debtor] to apply for a mortgage loan for the purchase of the subject

property . . . within ten days from March 22, 2007" and to notify J & V when that application

was complete.  *Id.* at *4.  The AOS also provided that any breach of Section Four constituted a

default by Debtor.  *Id.* at *4, 6.

      The final settlement date was pushed back to August 1, 2007 and a pre-settlement

inspection of the property took place on July 27, 2007.  *Id*. at *3.  Debtor attended the inspection

but did not attend settlement.  *Id.*  In addition, Debtor did not fully complete a mortgage

application and did not provide notice to J & V of any application.  *Id*. at *4–5.  After failing to

close on the property, there was an ongoing exchange between the parties attempting to reach an

agreement regarding the $10,000.00 held in escrow.  *Id.* at *6.  After the parties were unable to

reach an agreement, J & V sent a letter to Debtor notifying her of her breach of the AOS and,

ultimately, J & V filed a breach of contract action.  *Id.*

      The trial judge presiding over the matter, the Honorable Chad F. Kenney, described the

litigation as being "'almost like *Alice in Wonderland*.'"  *Id.* at *1 n.1 (quoting 7/21/10 N.T. 104).

Litigation lasted approximately three years, with J & V's complaint filed on May 8, 2008 and the

final verdict entered on March 15, 2011.  *Id.*  After a six-day trial spanning an eight-month

period to allow Debtor's counsel and husband, Mr. Malloy,[1] to prepare, J & V ultimately

prevailed on its claim and received a verdict in its favor. *Id.* at *10, 1 n.1. Debtor failed to file

timely post-trial motions and, therefore, a direct appeal was foreclosed and any appellate issues

waived. *Id.* at *1 n.1.

   B.   *The Fee Award*

   After receiving a verdict in its favor, J & V petitioned for attorneys fees against Debtor

pursuant to 42 Pa. Cons. Stat. § 2503(7) for demonstrating dilatory, obdurate, or vexatious

conduct during the prolonged litigation. *Id.* at *1.  Throughout the underlying breach of contract

litigation and  the attorneys fees litigation, Debtor and her counsel argued that J & V's "counsel

should be hauled before the Pennsylvania Attorney Disciplinary Board for daring to submit legal

argument in opposition to their case authorities and position." *Id.* at *9.  Further, Debtor

defended the Fee Award action by claiming the fee petition was moot "because it was filed by a

liar." *Id.*  The Honorable Charles B. Burr found these arguments unpersuasive and on July 13,

2013, J & V obtained a judgment in the Delaware County Court of Common Pleas (the "C.P.

Court") against Debtor for attorney's fees and costs in the amount of $63,486.05 (the "Fee

---

[1] At some point during the underlying transaction Debtor married her current counsel, Mr. Malloy.   Mr.
Malloy assisted Debtor with the initial real estate transaction, defended her in the breach of contract
action, and filed several subsequent actions on her behalf (all relating to the real estate transaction).  He
now represents her in the current bankruptcy action.  Mr. Malloy was found jointly and severally liable
for the actions that led to the Fee Award based on his involvement in the underlying litigation. *Hargy*,
2012 WL 11866877, at *19–20 (consistently referring to both Debtor and her attorney's actions in
tandem).   One of Debtor's arguments on appeal is that she is being held responsible for the actions of her
husband and counsel. *See, e.g.*, App. Br. at 26 (arguing that "regardless of any alleged violations of the
Rules of Professional Conduct by Mrs. Malloy's attorney, Mrs. Malloy cannot be denied a discharge
based on her attorney's conduct").  Debtor is liable for actions taken by her attorney under general
principles of agency law.  *See U.S. Bank Nat'l Assoc. v. PNC Bank N.A.*, Civil Action No. 14-2845, 2015
WL 5771823, at *7 (E.D. Pa. Oct. 2, 2015) (quoting *McCarthy v. Recordex Serv., Inc*., 80 F.3d 842, 853
(3d Cir. 1996)) (explaining that "[i]t is, of course, beyond cavil that the attorney-client relationship is an
agent-principal relationship.").  The fact that Mr. Malloy was also Debtor's husband only bolsters the
proposition that he was acting as an agent on her behalf during the course of the state court litigation and
that she had knowledge of his actions on her behalf.

3

Award")[2].  *Id.* at *1. The C.P. Court awarded the amount as a sanction pursuant to 42 Pa. Cons. Stat. § 2503(7) against Debtor, jointly and severally with her counsel.  *Id.*

Section 2503(7) requires "dilatory, obdurate, or vexatious" conduct in order to sanction a party for conduct during litigation.  42 Pa. Cons. Stat. § 2503(7).  The C.P. Court did not specifically distinguish the conduct it deemed "dilatory" from conduct it deemed "obdurate" and/or "vexatious."  Instead, on several occasions the C.P. Court referenced Debtor's conduct as dilatory, obdurate <u>and</u> vexatious.[3]  *Hargy*, 2012 WL 11866877, at *1, 11, 16, 19–22.  The C.P. Court awarded the Fee Award as a result of the costs and fees associated debtor's dilatory, obdurate, and vexatious conduct including:

(1) Debtor's service of burdensome interrogatories;

(2) Debtor's counsel's request for repeat appearances and questioning of trial witnesses;

(3) Debtor's counsel's empty threat to "to require [J & V's] trial-counsel to testify as a witness" in the breach of contract action which led to J & V incurring costs associated with securing substitute trial counsel;

(4) Debtor and her counsel's filing of a "Motion to Appoint substitute trial counsel *pro hac vice*, later withdrawn when [Debtor] and Mr. Malloy were advised by the Court that current rules previously unknown to them now required payment of a fee in order to do so";

(5) Debtor's persistent presentation of "legal theories and evidence that were irrelevant to establish a defense . . . that her trial counsel knew or should have known had no chance of succeeding"; and

---

[2] The Fee Award only included actions taken by Debtor and her counsel after July 28, 2009.  *Hargy*, 2012 WL 11866877, at *1 n.3. Judge Burr concluded that any actions taken prior to July 28, 2009 "involv[ed] fairly standard tactics and strategies."  *Id.*

[3] The C.P. Court also made several findings of bad faith on the part of Debtor and her counsel.  *Hargy*, 2012 WL 11866877, at *1, 2 n.5, 20.  However, 42 Pa. Cons. Stat. § 2503(7) does not require bad faith, unlike other subsections in the statute.  *See* 42 Pa. Cons. Stat. § 2503(9).

4

(6) Debtor's filing of an interlocutory appeal without permission from the court. *Id.* at *17. The C.P. Court ultimately found that it was "fundamentally clear in this record that this was not an ambiguously worded AOS, nor did it radically alter any well known [sic] precepts and patterns of practice in real estate law." *Id.* at *22. Nonetheless, Debtor and her counsel "employed pretzel logic, falsehood and the filing of endless rounds of continuing motions, coupled with obdurate and dilatory tactics, to slow this litigation to a snail's pace rather than admit her own failure to adhere to the express terms of the AOS." *Id.*

Debtor appealed the Fee Award to the Pennsylvania Superior Court. *J & V Developers, Inc. v. Hargy*, No. 2323 EDA 2012, 2013 WL 11253520 (Pa. Super. Ct. Oct. 24, 2013). On October 24, 2013 the Pennsylvania Superior Court affirmed the C.P. Court's opinion, finding that Judge Burr did not abuse his discretion in awarding attorney's fees. *Id.* at *17. Debtor attempted to Petition for Allowance of Appeal to the Pennsylvania Supreme Court, but her Petition was denied. *See J & V Developers, Inc. v. Hargy*, 94 A.3d 1010 (Pa. 2014).

### C. Bankruptcy Proceeding

On September 25, 2014, Debtor filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code. Bankruptcy No. 14-17727, Doc. 1. On December 19, 2014, J & V filed an adversarial complaint against Debtor seeking to classify the Fee Award as nondischargeable. App'x at A1–A59. On March 23, 2015, Debtor filed an initial motion for partial summary judgment on a factual issue relating to the underlying state court action. *Id.* at A297–A306. J & V responded by filing a cross-motion for summary judgment. *Id.* at A309–A316. J & V's motion argued that the findings made in the C.P. Court's opinion were preclusive on issues relating to nondischargeability under 11 U.S.C. § 523(a)(6) of the Bankruptcy Code. *Id.* at A314–A315.

In an Order and Opinion dated August 10, 2015, Judge Frank granted J & V's cross-motion and denied debtor's motion, thus deeming the Fee Award nondischargeable under 11 U.S.C. § 523(a)(6). *In re Malloy*, 535 B.R. 81, 97 (Bankr. E.D. Pa. 2015). In particular, Judge Frank concluded that the C.P. Court's findings in the Fee Award under 42 Pa. Cons. Stat. 2503(7) precluded any other finding than that Debtor's conduct leading to the Fee Award satisfied 11 U.S.C. § 523(a)(6) for nondischargeability purposes. *Id.* On September 9, 2018, Debtor filed the instant appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to review final orders from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). *In re Heritage Highgate, Inc.,* 679 F.3d 132, 139 (3d Cir. 2012). On appeal, the district court "review[s] questions of law de novo, findings of fact for clear error, and exercises of discretion for abuse thereof." *In re Jevic Holding Corp*., 787 F.3d 173, 179 (3d Cir. 2015). When dealing with issues of mixed law and fact, the court must "accept the [Bankruptcy Court's] finding of historical or narrative facts unless clearly erroneous, but exercise 'plenary review of the [Bankruptcy Court's] choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Commc'ns, Inc*., 945 F.2d 635, 642 (3d Cir. 1991) (quoting *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir. 1981)).

In reviewing the Bankruptcy Court's decision for legal errors *de novo*, this Court must also apply the appropriate legal standard for bankruptcy summary judgment motions. Federal Rule of Bankruptcy Procedure 7056 incorporates the traditional Federal Rules of Civil Procedure for summary judgment motions, stating that "Rule 56 [of the federal rules] applies in adversary proceedings." Under Federal Rule of Civil Procedure 56, courts shall grant summary judgment

in favor of the moving party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if it is "one that might 'affect the outcome of the suit under governing law.'" *Smith v. Johnson & Johnson*, 593 F.3d 280, 284 (3d Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute as to a material fact is "genuine" if it "is one that 'may reasonably be resolved in favor of either party.'" *Lomando v. United States*, 667 F.3d 363, 371 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 250). Nevertheless, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Rather, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

Accordingly, this Court must affirm the Bankruptcy Court if it finds that (1) the parties demonstrated no genuine dispute as to a material fact, (2) J & V was entitled to judgment as a matter of law, and (3) Debtor was not entitled to judgment as a matter of law.

## III.   DISCUSSION

In the bankruptcy proceeding both parties motioned for summary judgment after J & V's adversarial complaint was filed. Debtor motioned first, requesting partial summary judgment on various factual issues raised in J & V's adversarial complaint. App'x at A297–A306. In response, J & V filed a motion for summary judgment arguing that "Debtor and her co-defendant have had their day in Court, and are precluded by the doctrine of collateral estoppel from trying this matter on the same issues already decided again in this Court." *Id.* at A310. J & V requested that the Bankruptcy Court deem the Fee Award nondischargeable under 11 U.S.C. §

523(a)(6).  *Id.*  Accordingly, this Court will first address whether the Bankruptcy Court erred in concluding that Debtor was collaterally estopped from arguing that the Fee Award is dischargeable pursuant to § 523(a)(6).

### A.  *J & V's Motion for Summary Judgment*

On summary judgment, J & V maintained that "[i]n the underlying action, the state court has ruled and awarded [J & V] damages and attorney's fees determining Debtor and her co-defendant's conduct was dilatory, obdurate and vexatious."  *Id.* at A314.  Therefore, J & V maintained that the issue before the Bankruptcy Court was to "determine if the state court's determination of dilatory, obdurate and vexatious conduct is essentially the same as 'willful' and 'malicious' for the purposes of §523(a)(6)."  *Id.*  J & V argued that Debtor was collaterally estopped from re-litigating this issue.  *Id.* at A315–A316.

### 1.  Collateral Estoppel

According to Pennsylvania law,[4] "'[c]ollateral estoppel, or issue preclusion, is a doctrine which prevents re-litigation of an issue in a later action, despite the fact that it is based on a cause of action different from the one previously litigated."  *Weissberger v. Myers*, 90 A.3d 730, 733 (Pa. Super. Ct. 2014) (quoting *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995)).  Collateral estoppel applies equally to bankruptcy proceedings.  *In re Graham*, 973 F.3d 1089, 1097 (3d Cir. 1992); *United States v. Doyle*, 276 F. Supp. 2d 415, 425 (W.D. Pa. 2003).  Under the doctrine of collateral estoppel, a court will preclude a party from re-litigating an issue if: (1) the issue decided in a prior action is identical to the one presented in the later action; (2) the prior

---

[4] Pursuant to 28 U.S.C. § 1738, this Court is required to give "full faith and credit" to the Pennsylvania state court judgment pursuant to Pennsylvania's laws.  *See Oxford Invs., L.P. v. City of Phila.*, 21 F. Supp. 3d 442, 448 (E.D. Pa. 2014) (quoting *Gage v. Warren Twp. Comm. & Planning Bd. Members*, 463 F. App'x 68, 71 (3d Cir. 2012)) (finding that "28 U.S.C. § 1738 requires Federal Courts to give preclusive effect to state court judgments using 'the same preclusion rules as would the courts of that state.'")

action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action or in privity with a party to the prior action; (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action; and (5) the determination in the previous proceeding was essential to the judgment.  *Cohen v. Workers' Comp. Appeal  Bd. (City of Phila.)*, 909 A.2d 1261, 1264 (Pa. 2006); *Weissberger*, 90 A.3d at 733 (quoting *Catroppa v. Carlton*, 998 A.2d 643, 646 (Pa. Super. Ct. 2010)).

J & V alleges that the doctrine of collateral estoppel precluded Debtor from re-litigating the issue of whether she and her co-defendant engaged in dilatory, obdurate, and vexatious conduct.  In particular, J & V maintained that "Debtor's conduct in the underlying state court matter resulted in willful and malicious injuries to [J & V], and as a result the debt owed to [J & V] is non-dischargeable."  App'x at A314.  In the bankruptcy proceeding, Judge Frank described "two (2) methodologies a bankruptcy court may employ when evaluating the applicability of issue preclusion in a nondischargability proceeding, labeling them as a 'deductive' approach and an 'inductive approach.'"  *In re Malloy*, 535 B.R. at 90.  Judge Frank explained that

> The first methodology, most commonly employed in cases in which the first court made no specific findings . . . might be described as a **"deductive" approach.** In this approach, the bankruptcy court starts with the ultimate conclusions of the first court (which usually are not in dispute)—for example, that the court entered judgment in the creditor's favor on a particular cause of action. The court next attempts to reconstruct inferentially the necessary foundations of the prior decision. If that reconstruction process is successful, the court then compares those foundational elements of the prior court ruling to the statutory elements of the § 523(a) nondischargeability asserted by the plaintiff. This reasoning process may involve a purely legal analysis, *e.g.*, a comparison of the necessary elements of the claim litigated in the first proceeding with the elements of the bankruptcy nondischargeability claim. Or, the bankruptcy court may consider additional materials from the first proceeding, such as pleadings, briefs and jury instructions, in an effort to ascertain what issues were actually litigated before and necessarily

---

Accordingly, this Court must determine whether a Pennsylvania court applying its own laws would give preclusive effect to the Fee Award and, in turn, whether this Court should.

decided by the prior court (and, if the issues were mixed fact-law questions, the legal standard employed by the court). If the court is able to determine that particular issues were actually and necessarily litigated in the prior proceeding—be they fact issues or mixed fact-law issues—and concludes that they are identical to the issues in the bankruptcy proceeding, then relitigation of those issues will be precluded.

A second methodology, usually employed when the prior tribunal made express findings of fact and conclusions of law, distinct from the process described above, involves what might be characterized as an "**inductive**" rather than a "deductive" **approach**. By dropping down one level and focusing on the specific findings (particularly, findings of historical fact) in the prior proceeding that are entitled to preclusive effect, under the inductive approach, the court evaluates whether the preclusive facts, considered in the aggregate, establish any or all of the elements of a § 523(a) claim.

Under either analysis, the court must always consider whether the burdens of proof or the substantive legal standards in the bankruptcy proceeding differ from those of the prior proceeding, who prevailed in the earlier matter and which party in the bankruptcy proceeding seeks to invoke the issue preclusion doctrine.

*Id.* (quoting *In re Kates*, 485 B.R. 86, 102–03 (Bankr. E.D. Pa. 2012)).

The core issue on appeal relates to the first prong of the collateral estoppel analysis—identity of issues. Debtor argues that the Fee Award against her was for "dilatory, obdurate, and vexatious" conduct pursuant to 42 Pa. Cons. Stat. § 2503(7), which is not the same as a "willful and malicious injury" under 11 U.S.C. § 523(a)(6). Particularly, Debtor argues that there was no "malice" or state of mind finding by the C.P. Court, thereby creating a genuine issue of fact. Appellant Br. at 20, Doc. 5. Accordingly, this Court will analyze the Pennsylvania statute and the Bankruptcy Code to determine whether Debtor was collaterally estopped from relitigating the issue in the Bankruptcy Court.

### 2. Dilatory, Obdurate, and Vexatious Conduct

According to 42 Pa. Cons. Stat. § 2503(7), "[t]he following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter . . . [a]ny participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious

conduct during the pendency of the matter." "An award of counsel fees as a sanction against another participant for dilatory, obdurate, or vexatious conduct during pendency of [the] matter must be supported by the court's specific finding of such conduct." *Hargy*, 2012 WL 11866877, at *19 (citing *Kulp v. Hrivnak*, 765 A.2d 796, 799 (Pa. Super. Ct. 2000)). Courts will award such fees if, for example, a party pursues a claim that has "'no reasonable probability of success'" yet the litigant "'prolong[s] litigation and unnecessarily delays'" resolution of the matter. *Berg v. Georgetown Builders, Inc.*, 822 A. 2d 810, 817 (Pa. Super. Ct. 2003) (quoting *In re Estate of Liscio*, 638 A.2d 1019, 1022 (Pa. Super. Ct. 1994)). Pennsylvania courts have held that "'the intent of the rule permitting the recovery of counsel fees is not to punish all of those who initiate actions which ultimately fail, as such a course of action would have a chilling effect upon the right to raise a claim.'" *In re Estate of Liscio*, 638 A.2d at 1022 (quoting *Dooley v. Rubin*, 618 A.2d 1014, 1018 (Pa. Super. Ct. 1993)). Instead, "'the aim of the rule is to sanction those who knowingly raise, in bad faith, frivolous claims which have no reasonable possibility of success, for the purpose of harassing, obstructing or delaying the opposing party.'" *Id.* (quoting *Dooley*, 618 A.2d at 1018).

The word "dilatory" is defined by Black's Law Dictionary as conduct "[d]esigned or tending to cause delay" and "[g]iven to or characterized by tardiness." BLACK'S LAW DICTIONARY (10th ed. 2014). Similarly, the C.P. Court defined "dilatory" as "a lack of diligence that delayed proceedings unnecessarily and caused additional legal work." *Hargy*, 2012 WL 11866877, at *19.

In contrast, the word "obdurate" is defined as "unyielding or stubborn." *In re Padezanin*, 937 A.2d 475, 484 (Pa. Super Ct. 2007); *Scalia v. Erie Ins. Exchange,* 878 A.2d 114, 116 (Pa. Super. Ct. 2005); *Hargy*, 2012 WL 11866877, at *19.

Lastly, the word "vexatious" is defined as "without reasonable or probable cause or excuse; harassing; annoying." BLACK'S LAW DICTIONARY (10th ed. 2014). A litigant "can be deemed to have brought suit 'vexatiously' if he filed the suit without sufficient grounds in either law or in fact and if the suit served the sole purpose of causing annoyance." *Thurnberg v. Strause,* 682 A.2d 295, 299 (Pa. 1996)*; see also Chen v. Saidi*, 100 A.3d 587, 592 (Pa. Super. Ct. 2014); *Scalia,* 878 A.2d at 116 ("A party's conduct has been vexatious if he brought <u>or continued</u> a lawsuit without legal or factual grounds and if the suit served only to cause annoyance." (emphasis added)). The C.P. Court's conclusions of law similarly construed "vexatious," defining it as "continu[ing] the litigation without sufficient grounds in law or in fact for the sole purpose of annoyance." *Hargy*, 2012 WL 11866877, at *19. Notably, vexatious conduct has been defined by Pennsylvania courts to not only focus on the conduct in question, but also the motive for the conduct (i.e. the purpose of annoyance). *See Thurnberg,* 682 A.2d at 299*; Chen*, 100 A.3d at 592; *Scalia,* 878 A.2d at 116.

### 3. <u>Willful and Malicious Injury</u>

In contrast to the Pennsylvania statute which aims to sanction litigants for certain conduct during litigation, *In re Estate of Liscio*, 638 A.2d at 1022, the Bankruptcy Code "provide[s] a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)). Nevertheless, the Bankruptcy Code provides for certain "[e]xceptions to discharge [which] are strictly construed against creditors and liberally construed in favor of debtors." *In re Cohn*. 54 F.3d 1108, 1113 (3d. Cir. 1995). In particular, § 523(a)(6) of the Bankruptcy Code provides that an individual

12

debt in Chapter 7 bankruptcy is not dischargeable if it is "for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  A creditor seeking to exclude a debt from discharge must prove the requirements of a Bankruptcy Code exception by a preponderance of the evidence.  *Grogan*, 498 U.S. at 291.

The statute, on its face, suggests that the injury at issue must be both "willful" and "malicious" as two distinct elements.  *In re Webb*, 525 B.R. 226, 232 (M.D. Pa. 2015).  The Supreme Court has held "to be nondischargeable, the judgment debt must be "for willful and malicious *injury*. . . . [therefore] debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."  *Kawaauhau v. Geiger*, 523 U.S. 57, 63–64 (1998).

A "willful injury" is "a deliberate or intentional injury."  *In re Kates*, 485 B.R. at 100.  In the Third Circuit, "for the injury to have been 'willed' by the debtor, it must at least have been substantially certain to result from the debtor's act."  *In re Conte*, 33 F.3d 303, 307 (3d Cir. 1994).  Thus, in order to be a "willful injury" there must be a "deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury."  *Kawaauhau*, 523 U.S. at 61–62.  Accordingly, "a debtor's actions are willful and malicious within the meaning of § 523(a)(6) where those actions were substantially certain to result in injury or where the debtor desired to cause injury."  *In re Conte*, 33 F.3d at 308.

Malice has a different meaning "'for nondischargeability purposes under § 523(a)(6) as [compared to] contexts outside of bankruptcy.'"  *Feldman v. Am. Asset Fin., LLC*., 534 B.R. 627, 644 (E.D. Pa. 2015).  In *Tinker v. Colwell*, while discussing the phrase "willful and malicious injury" in an earlier bankruptcy statute, the Supreme Court defined the term "malice" as "a wrongful act, done intentionally, without just cause or excuse." 193 U.S. 473, 486 (1904).  An act is malicious "'even in the absence of personal hatred, spite or ill will.'"  *Feldman*, 534 B.R.

at 643–44. Thus, "'[i]n bankruptcy, debtor may act with malice without bearing any subjective ill will toward plaintiff creditor or any specific intent to injure same.'" *Id.* at 644. Further, "[a] plaintiff is not required to prove that the debtor acted with 'specific malice.'" *In re Rezykowski*, 493 B.R. 713, 722 (Bankr. E.D. Pa. 2013) (quoting *In re Conte*, 33 F.3d at 308).

Accordingly, this Court must determine whether the Bankruptcy Court erred in determining that the issue decided in C.P. Court was identical to that presented in the Bankruptcy Court and whether the "willful and malicious injury" standard under 11 U.S.C. § 523(a)(6) and the "dilatory, obdurate, and vexatious" standard under 42 Pa. Cons. Stat. § 2503(7) are similar enough to warrant applying the principles of collateral estoppel. *See Cohen*, 909 A.2d at 1264; *Weissberger*, 90 A.3d at 733 (quoting *Catroppa*, 998 A.2d at 646).

### 4. The Deductive Approach

Under the deductive approach, the Court must first "start[]with the ultimate conclusions of the first court (which usually are not in dispute)—for example, that the court entered judgment in the creditor's favor on a particular cause of action." *In re Malloy*, 535 B.R. at 90 (quoting *In re Kates*, 485 B.R. at 102–03). The Court then "attempts to reconstruct inferentially the necessary foundations of the prior decision." *Id.* (quoting *In re Kates*, 485 B.R. at 102–03). Lastly, the Court "compares those foundational elements of the prior court ruling to the statutory elements of the § 523(a) nondischargeability asserted by the plaintiff." *Id.* (quoting *In re Kates*, 485 B.R. at 102–03). After employing the deductive approach, the Bankruptcy Court determined that though "it [was] questionable whether, as a matter of law, a sanction imposed for dilatory or obdurate behavior is a debt for willful and malicious injury under 11 U.S.C. § 523(a)(6). . . . a sanction for vexatious behavior, *i.e.,* behavior whose *purpose* was to cause annoyance is entirely consonant with the scienter standard of § 523(a)(6)." *Id.* at 94. This Court agrees.

14

First, the Bankruptcy Court was correct in concluding that it is questionable as to whether dilatory and/or obdurate behavior is identical to a willful and malicious injury.  More specifically, a court finding that a litigant employed tactics that caused a delay in the proceeding or was "unyielding or stubborn" is not identical to a finding of a deliberate and intentional injury or one that was substantially certain to occur.  *In re Padezanin*, 937 A.2d at 484; *Scalia,* 878 A.2d at 116; *Hargy*, 2012 WL 11866877, at \*19.  Nor is it the same as finding a "wrongful act, done intentionally, without just cause or excuse."  *Tinker*, 193 U.S. at 486.  Unlike a willful and malicious injury which requires that the debtor acted intentionally, dilatory and obdurate under 42 Pa. Cons. Stat. § 2503(7) lack a scienter requirement.  *Compare* 11 U.S.C. § 523(a)(6) *with* 42 Pa. Cons. Stat. § 2503(7).  Thus, in theory, a party could act recklessly or negligently by delaying the proceeding or behaving stubbornly and a court could find this behavior to be dilatory and obdurate.  However, this conduct still would not satisfy the requirements of a willful and malicious injury.  *Kawaauhau*, 523 U.S. at 63–64 (concluding that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)).

In contrast, a debtor acts vexatiously when she is "without reasonable or probable cause or excuse; harassing; annoying."  BLACK'S LAW DICTIONARY.  A debtor's "conduct has been vexatious if [s]he brought or continued a lawsuit without legal or factual grounds and if the suit served only to cause annoyance."  *Scalia,* 878 A.2d at 116.  Therefore, a court's finding of "vexatiousness" requires a finding that the party initiated or continued litigation for "the sole purpose of causing annoyance."  *Thurnberg,* 682 A.2d at 299.  Comparatively, "a debtor's actions are willful and malicious within the meaning of § 523(a)(6) [when] those actions were substantially certain to result in injury or where the debtor desired to cause injury."  *In re Conte*, 33 F.3d at 308.  Therefore, both "vexatious" and "willful and malicious injury" have a scienter

requirement.  *See id.; Thurnberg,* 682 A.2d at 299.  However, under § 523(a)(6) there must be a
"deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury."
*Kawaauhau*, 523 U.S. at 61–62.

As explained above, a debtor that behaves vexatiously will proceed in litigating an action
with insufficient factual and/or legal support, solely for the purpose of annoying the opponent.
*Thurnberg,* 682 A.2d at 299; *Scalia,* 878 A.2d at 116.  In continuing to litigate the matter, it is
certain that both parties will have to expend resources until the matter is resolved.  Therefore, a
party that intentionally proceeds in litigating an action with insufficient factual and/or legal
support for the sole purpose of annoying the opponent does so while knowing that "those actions
were substantially certain to result in injury."  Particularly, it is substantially certain that the
opponent will be harmed financially.  Thus, this Court finds that the Bankruptcy Court was
correct in concluding that "the C.P. Court's determination that the Debtor's conduct was
vexatious under 42 Pa.C.S. § 2503(7) establishes that the debt is for a willful and malicious
injury and therefore, nondischargeable under 11 U.S.C. § 523(a)(6)."  *In re Malloy*, 535 B.R. at
94.

5.  The Inductive Approach

In contrast to the deductive approach, the inductive approach "focus[es] on the specific
findings (particularly, findings of historical fact) in the prior proceeding that are entitled to
preclusive effect."  *In re Malloy*, 535 B.R. at 90 (quoting *In re Kates*, 485 B.R. at 102–03).  The
Court then "evaluates whether the preclusive facts, considered in the aggregate, establish any or
all of the elements of a § 523(a) claim."  *Id.* (quoting *In re Kates*, 485 B.R. at 102–03).
Therefore, "[c]ollateral estoppel is applicable if the facts established by the previous judgment in
the [C.P. Court]" that J & V received attorney's fees and costs because Debtor engaged in

dilatory, obdurate, and vexatious conduct, "meet the requirements of nondischargeability . . . . namely that the" debt was incurred as a result of a willful and malicious injury. *In re Docteroff*, 133 F.3d 210, 215 (3d Cir. 1997); *see also* 11 U.S.C. § 523(a)(6). The Bankruptcy Court concluded that "the historical facts upon which the C.P. Court based its decision, those facts— which may not be relitigated—establish as a matter of law that the subject debt is for a willful and malicious injury under 11 U.S.C. § 523(a)(6)." *In re Malloy*, 535 B.R. at 94 (footnote omitted). Thus, "no reasonable factfinder could conclude anything other than that the Debtor deliberately, wrongfully and subjectively knew that her conduct would injure J & V." *Id.* This Court agrees.

The C.P. Court specifically found that Debtor and her counsel engaged in dilatory, obdurate, and vexatious conduct including:

(1) Debtor's service of burdensome interrogatories;

(2) Debtor's counsel's request for repeat appearances and questioning of trial witnesses;

(3) Debtor's counsel's empty threat to "to require [J & V's] trial-counsel to testify as a witness" in the breach of contract action which led to J & V incurring costs associated with securing substitute trial counsel;

(4) Debtor and her counsel's filing of a "Motion to Appoint substitute trial counsel *pro hac vice*, later withdrawn when [Debtor] and Mr. Malloy were advised by the Court that current rules previously unknown to them now required payment of a fee in order to do so";

(5) Debtor's persistent presentation of "legal theories and evidence that were irrelevant to establish a defense . . . that her trial counsel knew or should have known had no chance of succeeding"; and

(6) Debtor's filing of an interlocutory appeal without permission from the court. *Hargy*, 2012 WL 11866877, at *17.   Accordingly, these facts which supported the C.P. Court's determination that Debtor engaged in dilatory, obdurate, and vexatious conduct during the breach of contract proceeding, are entitled to preclusive effect. *In re Malloy*, 535 B.R. at 90.

In regards to the burdensome interrogatories, the C.P. Court determined that the court in the breach of contract action "dismiss[]ed 123 of 150 Interrogatories served by [Debtor] upon [J & V], among which were requests such as: 'if you lose your action, please provide one reason Deborah Hargy should not sue you and your attorneys?' and 'why are you not returning Deborah Hargy's money as you promised you would?'" *Hargy*, 2012 WL  11866877, at *17 (quoting Petitioner's Post Record Hearing Proposed Findings of Fact and Conclusions of Law, pp. 18-19; 3/26/2012 Attorney Fees Petition Hearing N.T. 82-83). As it relates to the costs incurred due to the repeat questioning of witnesses, the C.P. Court found that Debtor and her counsel "engaged in tortured testimonial excesses over a course of years through both the trial of this case and at the Hearing on Plaintiff's Petition for Attorney Fees to establish that a 'brawl' took place on September 5, 2007 at an alleged second walk-through inspection of the subject property." *Id.* at *21.  The C.P. Court deemed this story as one Debtor "constructed from apparent whole cloth." *Id.* at *7.

Furthermore, Debtor utilized frivolous legal theories such as Debtor persistently arguing that her counsel and husband, Mr. Malloy, was entitled to real estate commission based upon an alleged under the table oral agreement. *Id.* at *9, 20.  The C.P. Court found that Debtor's counterclaim for a commission was "based on an irrational belief that a licensed attorney can act as a real estate broker without obtaining a real estate license." *Id.* at *9.  Instead of conceding the claims were baseless or litigating the issues in due course, Debtor and her counsel threatened

to bring disciplinary action and a Dragonetti action against J & V's counsel for wrongful use of civil proceedings.  *Id.*

Debtor and her counsel were forewarned by the trial judges overseeing the breach action that they might face sanctions if engaging in dilatory, obdurate, or vexatious behavior.  *Id.* at *11.  Despite this, in the words of the C.P. Court, Debtor and her counsel "employed pretzel logic, falsehood, and the filing of endless rounds of continuing motions, coupled with obdurate and dilatory tactics, to slow [the] litigation to a snail's pace rather than admit her own failure to adhere to the express terms of the AOS."  *Id.* at *22.  Debtor "shamelessly and blatantly ignored" various warnings from the C.P. Court of the consequences of her actions.  *Id.* at *11.

This Court concludes that the underlying conduct that led to the Fee Award constituted a "willful and malicious injury" under 11 U.S.C. § 523(a)(6).  Debtor intended to delay and frustrate the breach of contract action and utilized burdensome litigation tactics that led to increased attorney's fees.  She had knowledge that her actions would lead to sanctions, having been specifically told so by various trial judges in the underlying action.  The conduct in question rose above mere recklessness.  The injury was deliberate and intentional and done without just cause or excuse.  *Kawaauhau*, 523 U.S. at 61–62; *Tinker*, 193 U.S. at 486.  Debtor engaged in this conduct while knowing that her actions "were substantially certain to result in injury" and were therefore "willful and malicious within the meaning of § 523(a)(6)."  *In re Conte*, 33 F.3d at 308.

Debtor's primary argument is that there was no "malice" or state of mind finding by the C.P. Court, thereby creating a genuine issue of fact.  Appellant Br. at 20.  Debtor, however, misinterprets the legal requirements of malice in the bankruptcy context.  Malice is merely a "wrongful act, done intentionally, without just cause or excuse."  *Tinker*, 193 U.S. at 486.

Specific malice or ill-will is not required.  *Feldman*, 534 B.R. at 643–44; *In re Rezykowski*, 493 B.R. at 722).  Debtor's decision to continue defending her action without any underlying legal or factual support for her claims and to pursue an illegitimate and likely illegal claim for real estate commission for her husband constitutes a malicious injury.  Further, Debtor's and persistent threats against J & V's counsel were not only intentional but also lacked "just cause or excuse" and thus also constitute a malicious injury.[5]  *Id.*

The court in *In re Conner,* 302 B.R. 509 (Bankr. W.D. Pa. 2003), reached a conclusion similar to this Court.  In *In re Conner*, "John and Leslie Wrobel, plaintiffs in [the] adversary action, . . . brought a motion for summary judgment with respect to their assertion that a debt owed to them by debtors Clarence and Gail Conner is excepted from discharge by § 523(a)(6) of the Bankruptcy Code."  302 B.R. 509, 510.  The Wrobels argued that "the debt is for a willful and malicious injury debtors inflicted on them during the course of an action plaintiffs brought in state court to quiet title to land over which a portion of debtors' driveway runs."  *In re Conner*, 302 B.R. at 510.  The debt was incurred as a result of a state court decision that "determined that debtors' conduct from August 2001 to May of 2002, had been dilatory, obdurate and vexatious'" and in violation of 42 Pa. Cons. Stat. § 2503(6).  *Id.* at 512 (footnote omitted).  After examining the Pennsylvania statute and the Bankruptcy Code, the court concluded that "the debt for counsel fees and expenses debtors owe to plaintiffs was for a willful and malicious injury to plaintiffs or their property."  *Id.* at 515.

Based on the preclusive facts, this Court finds that the Bankruptcy Court did not err or abuse its discretion when concluding that the Fee Award constituted a "willful and malicious injury" under 11 U.S.C. § 523(a)(6) and when granting J & V's Cross-Motion for Summary

---

[5] At one point, Judge Burr even goes so far as to call Debtor's entire litigation "'Malice in Wonderland.'" *Hargy*, 2012 WL 11866877, at *22.

Judgment. Summary judgment is appropriate where the evidence is "so one-sided that [J & V] must prevail as a matter of law." *Anderson*, 477 U.S. at 252. The C.P. Court findings lead to the conclusion that Debtor specifically intended to cause the delay in the proceeding and increased litigation fees without just cause or excuse, leaving no genuine issue of material fact that the debt (the Fee Award) was for a "willful and malicious injury" and thus nondischargeable in bankruptcy. *See Kawaauhau*, 523 U.S. at 63; *Tinker*, 193 U.S. at 486.

### B.  *Debtor's Motion for Partial Summary Judgment*

Prior to J & V's cross-motion, Debtor moved for partial summary judgment. App'x at A297–A306. Debtor did not raise issues with the Fee Award in her motion and instead requested partial summary judgment on factual issues raised in J & V's adversarial complaint. *Id.* at A302–A304.[6] Nonetheless, Debtor's attempt to relitigate is barred by collateral estoppel. *Cohen*, 909 A.2d at 1264; *Weissberger*, 90 A.3d at 733 (quoting *Catroppa*, 998 A.2d at 646).

---

[6] In particular, Debtor argued and continues to argue that J & V lied to the state trial court and lied to the Bankruptcy Court. *See, e.g.*, Appellant Br. at 30, Doc. 5 (contending that "[t]here is no way creditor J & V Developers, Inc., by and through its counsel, can proceed with this case, without correcting its prior misstatements" to all of the courts in which this matter was heard.). Debtor pursued a similar argument in C.P. Court. *See, e.g.*, *Hargy*, 2012 WL 11866877, at *9 (stating that Debtor argues that J & V's counsel has lied about every allegation against the Defendant in this case and, therefore, this Petition [for Attorney's Fees] must be deemed moot because it was filed by a liar"). However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010). Furthermore, Debtor's argument on appeal is that J & V lied when stating that it was not trying to sell Debtor a home after August 1, 2007. Appellant Br. at 10. Debtor relies on J & V's adversarial complaint as evidence of this purported lie. J & V's adversarial complaint states that "[b]y early September 2007, Debtor/Defendant had decided that she would not attempt to purchase the Property and considered the AOS to be unenforceable." App'x at A.13. This statement or "admission" does not provide evidence of J & V's deceit. Debtor seems to draw the inference that Debtor's belief that the property was still going to be sold to her after August 1, 2007 means that J & V believed the property was going to be sold to her after that date. This is clearly an unsupported assumption and the statement offers no insight into whether J & V was still trying to sell the property after August 1, 2007. Quite the contrary, the C.P. Court stated that "it became clear that the [Debtor] considered the parties' Agreement of Sale to have been 'unenforceable' as of September-of 2007, and that she was not attempting to purchase this property" and J & V inserted this assertion into its adversarial complaint. *Hargy*, 2012 WL  11866877, at *1 n.3. This Court finds that the core of Debtor's argument is an attempt to relitigate issues relating to the breach of contract action which is collaterally estopped.

"'[A] losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.'" *Duvall v. Attorney General of U.S.*, 436 F.3d 382, 387 (3d Cir. 2006) (quoting *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991)).  All of the factual issues raised in Debtor's motion for partial summary judgment relate to the underlying breach of contract action in the C.P. Court.  Debtor's motion, on its face, is a clear attempt to relitigate the underlying breach of contract action.[7]  Accordingly, the Bankruptcy Court appropriately denied Debtor's Motion for partial summary judgment and this Court will affirm.

## IV.   CONCLUSION

For the reasons set forth herein, the C.P. Court's determination that Debtor engaged in dilatory, obdurate, and vexatious conduct presented essentially the same issue as a "willful and malicious injury" under the Bankruptcy Code and thus collaterally estopped Debtor from relitigating this issue.  The Bankruptcy Court properly excepted the Fee Award from discharge under 11 U.S.C. § 523(a)(6) and therefore summary judgment was appropriate.  Accordingly, the judgment of the Bankruptcy Court is affirmed.  An appropriate Order follows.

---

[7] Notably, this is not the first time Debtor has attempted to relitigate factual issues relating the underlying breach action despite being barred from doing so.  *See Hargy*, 2013 WL 11253520, at *13–14.